## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| WEPAY GLOBAL PAYMENTS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  21 C 5052 |
| PNC BANK, N.A., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

Before the Court is Defendant PNC Bank, N.A.'s ("PNC") Motion to Transfer Venue under 28 U.S.C. § 1404(a). For the following reasons, the Court grants PNC's Motion and transfers this case to the U.S. District Court for the Western District of Pennsylvania.

## BACKGROUND

This is a design patent infringement case. Plaintiff Wepay Global Payments LLC ("Wepay") alleges PNC violated Wepay's United States Design Patent, Number D930,702 (the "Design Patent"). Specifically, Wepay alleges that a portion of PNC's mobile application that interfaces with a digital payment network, called Zelle, infringes Wepay's Design Patent.

PNC brings this Motion to Transfer Venue to the U.S. District Court for the Western District of Pennsylvania because that district is where its corporate headquarters is situated and where most of its relevant witnesses reside. Further, PNC argues that Wepay has no connection with the Northern District of Illinois other than the location of Wepay's attorney's office. Wepay asserts the case should remain in the Northern District of Illinois because PNC has physical bank branches in the District and because Wepay's choice of forum is entitled to deference.

## LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). The movant "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). In applying Section 1404(a), the Court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "The weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, and, therefore, is committed to the sound discretion of the trial judge." *Coffey*, 796 F.2d at 219. The Court's analysis is "flexible and individualized," *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

(1988), and "look[s] beyond a narrow or rigid set of considerations." *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

## DISCUSSION

Neither party disputes the propriety of either the venue here or in the Western District of Pennsylvania. Accordingly, the only issue present before the Court is whether transfer will serve the convenience of the parties and witnesses and the interests of justice. The Court addresses these factors in turn.

## A. Private Interest Factors

In evaluating the relevant private interests, the Court weighs "(1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses." *Cent. States, Se. & Sw. Areas Pension Fund v. Mills Invs., LLC*, 2011 WL 4901322, at *2 (N.D. Ill. 2011).

### 1. Plaintiff's Choice of Forum

This factor is neutral. In general, the venue selected by the plaintiff is given deference, but this Court has noted that "[w]here a plaintiff does not reside in his chosen form, the deference owed his choice is 'substantially reduced.'" *Post Media Sys. LLC v. Apple Inc.*, 2020 WL 833089, at *2 (N.D. Ill. 2020) (Kocoras, J.); *see also Sunrise Bidders, Inc. v. GoDaddy Grp., Inc.*, 2011 WL 1357516, at *2 (Kocoras, J.) (noting a "plaintiff's choice of forum may be afforded less deference . . . when another forum has

a stronger relationship to the dispute or when the forum of plaintiff's choice has no significant connection to the situs of material events").

Wepay is a Delaware limited liability company with no substantial contacts with Illinois. Its only principal, Mr. Grecia, lives in Downington, Pennsylvania. By the same token, PNC is incorporated in Delaware and has its corporate headquarters in Pittsburgh, Pennsylvania. It maintains a nationwide presence, but the development of the allegedly infringing app took place in Pennsylvania.

Even where a plaintiff selects a particular district, the mere existence of a nationwide business in the Northern District of Illinois "cannot swing the balance" where the plaintiff has minimal contacts in the district. *Post Media Sys.*, 2020 WL 833089, at *2 (quoting *Hanley v. OMarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998)). Even if the Court accords Wepay's choice of venue significant deference, on balance, transfer would still prevail because, as explained below, the private and public interest factors favor transfer to the Western District of Pennsylvania. Though Wepay selected this Court as its preferred venue because of the proximity to its lawyer's office, any other venue in the country arguably could be just as appropriate—including the Western District of Pennsylvania.

Again, Wepay is correct that its selection of this venue is entitled to some deference. However, the level of deference to Wepay's choice is seriously diminished considering the lack of relationship between this Court, Wepay and PNC, and the

relative strength of the relationship between the Western District of Pennsylvania and PNC. Accordingly, this factor is neutral.

## 2. Situs of Material Events

The situs of the material events of this case weighs in favor of transfer. In patent infringement suits, the situs is where the alleged infringement took place, or the location of the alleged infringer's principal place of business. *Body Sci. LLC v. Bos. Sci. Corp.*, 846 F. Supp. 2d 980, 993 (N.D. Ill. 2012) (relevant situs is "the location of the allegedly infringing sales, or the alleged infringers's [sic] place of business") (quoting *Ellis Corp. v. Jensen USA, Inc.*, 2003 WL 22111100, at *3 (N.D. Ill. 2003)).

Wepay asserts that because the legal test that would be presented to a jury is the "ordinary observer" test, any jury pool would be sufficient. Dkt. # 18, at 7–8. While this may be true, the situs of material events factor does not revolve around the legal test at issue, nor the relative ease or inability to empanel a jury. Rather, the inquiry asks in which geographic location did the alleged act that gives rise to a suit occur.

In this case, the relevant geographic question is where the alleged infringement of the Design Patent occurred. PNC advocates that the most important consideration to determine where the situs of material events is the defendant's principal place of business. *See* Dkt. # 9, at 9. We agree. For lack of a particular locus of infringement, the best venue is that where the corporate headquarters of the putative infringer resides. *See Post Media Sys.*, 2020 WL 833089, at *2 ("In patent cases, courts focus on the location of the infringer's principal place of business since these cases center on the

infringer's activities and documents."); *Knight v. Baxter Healthcare Corp.*, 2020 WL 6287404, at *2 (N.D. Ill. 2020) (Kocoras, J.). Because Wepay does not allege that infringement of its Design Patent took place in any particular venue, the next best situs is the corporate headquarters of PNC. PNC maintains its corporate headquarters in the Western District of Pennsylvania. Accordingly, the situs factor weighs in favor of transfer.

### 3. Relative Ease and Access to Sources of Proof

This factor is neutral. PNC argues that because the documents likely to be relevant will be accessed from its information technology ("IT") department, and because this IT function is "centered" in Pennsylvania, Dkt. # 9, at 10, this factor weighs in favor of transfer. We disagree. "In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, is no more costly than transferring them across town." *Rabbit Tanaka Corp. USA v. Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009); *see also Leuders v. 3M Co.*, 2008 WL 2705444, at *3 (N.D. Ill. 2008) ("When documents are easily transferable, access to proof is a neutral factor."). PNC notes that it is not aware of any documents or physical evidence in Illinois. Dkt. # 9, at 11. Because neither venue is more convenient for ease of access to documents, this factor is neutral.

### 4. Convenience of the Parties

This factor—the convenience to the parties—favors transfer. This factor considers "the parties' residences and their ability to bear the expense of litigating in each forum." *McCain Foods Ltd. v. J.R. Simplot Co.*, 2017 WL 3432669, at *4 (N.D. Ill. 2017).

Put simply, Mr. Grecia, Wepay's sole representative, lives in Pennsylvania. He has also litigated in Pennsylvania district courts. *See* Dkt. # 9, at 11. Other than the presence of Wepay's lawyer in Chicago and associated past litigation, it appears that there is no reason to believe that it is more convenient for Wepay to litigate here rather than in Mr. Grecia's home state. No matter how Wepay slices it, Mr. Grecia would still need to travel from the Philadelphia area to Chicago or from the Philadelphia area to Pittsburgh. Wepay's principal argument, that flights are shorter and less expensive from Philadelphia to Chicago than from Philadelphia to Pittsburgh, is unavailing. *See* Dkt. # 18, at 10. The fact of the matter is that geographically Pittsburgh and Philadelphia are closer to one another than Pittsburgh and Chicago. It logically follows that it would likely be more convenient, expedient, and cost-efficient for Mr. Grecia to travel between Pittsburgh and Philadelphia. A single public search for flight options relied upon by Wepay is not enough to overcome this fact. *See* Dkt. # 18, ¶ 5. By the same token, the corporate headquarters of PNC is in Pittsburgh, the same city as is located the U.S. District Court for the Western District of Pennsylvania. Therefore, it is likely more convenient and cost-effective for PNC to litigate there.

By transferring the current action to the Western District of Pennsylvania, the Court is not, as Wepay argues, "transferr[ing] simply to shift inconvenience from the defendant to the plaintiff." Dkt. # 18, at 10 (quoting *N. Shore Gas Co v. Salomon*, Inc., 896 F. Supp. 786, 791 (N.D. Ill. 1995)). Both parties are located in, and have significant contacts with, the state of Pennsylvania. Neither party has significantly greater contact with Illinois. Given the choice between these two venues, Pennsylvania prevails. This factor favors transfer.

### 5. Convenience of the Witnesses

The fifth factor—the convenience of non-party witnesses—also favors transfer. "The convenience of the witnesses is often the most important factor in determining whether to grant a motion to transfer." *Mgmt. Registry, Inc. v. Batinich*, 2018 WL 1586244, at *4 (N.D. Ill. 2018) (Kocoras, J.). The convenience of non-party witnesses is generally given greater weight than the convenience of party witnesses. *See Post Media Sys.*, 2020 WL 833089, at *3–4. This is because party witnesses, such as those employed by a party, are more likely to appear voluntarily. *See id.*; *AL & PO Corp. v. Amer. Healthcare Capital, Inc.*, 2015 WL 738694, at *4 (N.D. Ill. 2015) ("[T]he convenience of witnesses who are within a party's control, such as a party's employees, is far less important than the convenience of non-party witnesses.").

Most of the potential witnesses, both party and non-party, that PNC could call are either in or near the Western District of Pennsylvania. PNC identified at least two non-party witnesses. First, it identified Mr. Vivek Kallur, a third-party contractor that

worked on the banking application. He currently is located in or near Pittsburgh. Second, it identified Ms. Meredith Newman, who currently is located in Washington, D.C. PNC also identified at least nine party witnesses, all of which are current PNC employees. Of these nine, six are located in or around the Western District of Pennsylvania, two are located in Ohio, and one is located in Denver, Colorado.

Wepay cannot escape the convenience of these witnesses by claiming their testimony will not be directly relevant to the legal test of the case. While Wepay argues these witnesses will not have relevant testimony in a design patent case, PNC appears to believe these witness's testimony will be relevant. Accordingly, any or all these witnesses could be called to testify. If this case remains in this District, every PNC witness, either party or non-party, would be made to travel a significant distance from their places of home and work. However, if the case is transferred to the Western District of Pennsylvania, most of the named witnesses will be within or near the location of the proceedings. Though party witnesses are afforded less weight in a transfer analysis than non-party witnesses, *see Post Media Sys.*, 2020 WL 833089, at *3–4, transfer of this case will provide significant convenience for more witnesses with no loss of convenience for Wepay. This factor weighs in favor of transfer.

In sum, the weight of the private interest factors favor transfer to the Western District of Pennsylvania.

**B.  Public Interest Factors**

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Research Automation*, 626 F.3d at 978.  In evaluating the interests of justice, the Court considers "(1) how quickly the case will proceed to trial; (2) the court's familiarity with the applicable law; and (3) the relationship of the parties to and the desirability of resolving the controversy in a particular community." *Mills Invs.*, 2011 WL 4901322, at *2.

**1.  Docket Congestion and Speed to Trial**

The first public interest factor—the relative congestion of each venue— weighs in favor of transfer.  "To evaluate the speed at which a case will proceed, courts look to two statistics: (1) the median number of months from filing to disposition for civil cases and (2) the median number of months from filing to trial for civil cases." *Campbell v. Campbell*, 262 F. Supp. 3d 701, 712 (N.D. Ill. 2017).

The median time from filing to disposition and from filing to trial are both shorter for the Western District of Pennsylvania.  The 2021 median time from filing to disposition is 14.2 months in the Northern District of Illinois, where the 2021 median time from filing to disposition in the Western District of Pennsylvania is 6.0 months. *United States District Courts—Judicial Caseload Profiles*, U.S. Cts. 18, 47 (Apr. 30, 2021) (comparing annual case statistics for each active federal judgeship).[1]    The

---

[1] Available at https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2021.pdf.

Western District of Pennsylvania has a significantly reduced median time from filing to disposition as compared to the Northern District of Illinois.

The 2020 median time from filing to trial is 41.3 months in the Northern District of Illinois, but the 2020 median time from filing to trial is 31.9 months in the Western District of Pennsylvania. *Id.* The Western District of Pennsylvania therefore has a shorter median period from filing to trial by about 9.4 months.

The parties disagree in their briefs about which year of reported statistics to use. In its Motion to Transfer, PNC reported the 2021 statistics for the Western District of Pennsylvania as compared to the 2020 statistics for the Northern District of Illinois. Dkt. # 9, at 13. In Wepay's Response, it appears to note that the correct statistics are those from 2020. Dkt. # 18, at 12.

The Court finds that the 2020 median time is the most appropriate for comparison because the U.S. Courts report does not have data for the year 2021 for the Western District of Pennsylvania. *Id.* Because the median time periods from both filing to disposition and from filing to trial is significantly shorter in the Western District of Pennsylvania than the corresponding time periods in the Northern District of Illinois, this factor weighs in favor of transfer, although not heavily.

### 2. Familiarity with Applicable Law

This factor is neutral. Where a federal court must decide issues of federal law, each federal court must be presumed to be equally competent in its ability to decide federal claims. Design patents present questions of federal law. *See* 35 U.S.C. § 271

11

*et seq.* (patent infringement statute). Accordingly, both the Western District of Pennsylvania and this Court are presumed to have equal competence to resolve the issues presented in this case.

It might be true, as Wepay notes, that this Court has more experience with design patent cases. Dkt. # 18, at 12. However, courts in the Western District of Pennsylvania are no more or less able to adjudicate design patent claims than this Court. Both courts are equally competent to hear these federal design patent claims. Therefore, this factor does not weigh for or against transfer.

### 3. The Respective Desirability of Resolving Controversies in Each Locale and the Relationship of Each Community to the Controversy

The third and fourth factors—the relationship of the parties to and the desirability of resolving the controversy in a community—favor transfer because the Western District of Pennsylvania has a stronger relationship to both the parties and the controversy than the Northern District of Illinois.

Wepay does not have a strong relationship with Illinois. Where a plaintiff's only contact with the Northern District of Illinois is the "presence of its attorney, the action's 'Illinois contacts' are 'extremely tenuous' and transfer should be ordered in the interest of justice.'" *Knight*, 2020 WL 6287404, at *5 (quoting *Perfect Latex, Pt. Ltd. v. Steriltx (U.S.A.), Inc.*, 1995 WL 109308, at *4 (N.D. Ill. 1995)).

Nor does PNC have a significant relationship with the community of Illinois. When a party operates stores nationwide, there is not a compelling community interest

12

in one particular district. *See George & Co. LLC v. Target Corp.*, 2021 WL 2948910, at *6 (N.D. Ill. 2021) (Kocoras, J.); *Lafleur v. Dollar Tree Stores, Inc*., 2012 WL 2280090, at *7 (N.D. Ill. 2012) ("Because Dollar Tree operates stores nationwide, we find that, with respect to Plaintiffs' claims, there is no compelling community interest that would be preserved by the selection of one venue over another.") (cleaned up).

Wepay asserts that because PNC has both physical branches and ATMs in the Northern District of Illinois, the community has a compelling interest in the resolution of its infringement claim. PNC operates its banks nationwide, but PNC has its corporate headquarters in Pittsburgh—the location of the Western District of Pennsylvania. Therefore, the strongest community tie is the city of Pittsburgh. Further, the state of Pennsylvania, in which the Western District of Pennsylvania sits, is more concerned with the activities of a business operating primarily out of its own state.

Finally, even if we consider the physical presence of PNC in this District to provide a relationship with the forum more than zero, Wepay still does not have a significant relationship with its chosen venue. Aside from its past and present choices to litigate in the Northern District of Illinois and the offices of its attorney, Wepay is as connected to the Northern District as it is to any other district court in the country. Accordingly, the relationship of this controversy to Pennsylvania and its district courts is stronger than its relationship to Illinois and our district courts. This factor weighs in favor of transfer.

The Court concludes that, taking the private and public interest factors together, the Western District of Pennsylvania is a more convenient and just forum for the efficient resolution of this case. This is true notwithstanding Wepay's choice of forum. Transfer is therefore warranted.

## CONCLUSION

For the foregoing reasons, the Court grants PNC's Motion to Transfer Venue [8]. The Clerk is ordered to transfer this action to the United States District Court for the Western District of Pennsylvania. Civil case terminated. It is so ordered.

Dated: April 5, 2021

Charles P. Kocoras
United States District Judge